SCOTT T. BLOOD
REG. NO.: 11632-090
TEXARKANA FCI
Post Office Box 7000
Texarkana, Texas 75505

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF WISCONSIN

## MADISON DIVISION

------------------------------------------------x

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:19-CR-131-JDP |
| Plaintiff, | Hon. James Peterson |
| v. | [Filed concurrently with Declaration of Neal Cabaluna, M.D., Declaration of Carmen A. Blood] |
| SCOTT T. BLOOD, | |
| Defendant. | |

------------------------------------------------x

# DECLARATION OF SCOTT T. BLOOD IN SUPPORT OF HIS MOTION FOR COMPASSIONATE RELEASE AND/OR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(l)(A)

1

1. My name is Scott T Blood. I currently incarcerated at FCI TEXARKANA LOW in Texarkana, Texas.

2. I was convicted on a plea of guilty for Possession and Receipt of Child Pornography.

3. On June 11, 2020, I was sentenced by the honorable Judge James Peterson to a term of 144 months incarcerated, and twenty (20) years of supervised release.

4. My anticipated release date is December 7, 2029

5. This is my first and only offense and I have never committed a crime of violence nor is there any violence in my past.

6. My medical conditions are documented by the BOP and I have provided the Court with the scant records that were given to me. My medical conditions are as follows: **C.O.P.D.,** - Chronic Obstructive Pulmonary Disease, **Diabetes Type 2, Obesity,** - BMI over 32%, **Asthma,** - Moderate/Severe, **Hypertensive Heart Disease,** - Chronic High Blood Pressure, and **Hyperlipidemia,** - High Cholesterol. Attached is the true and correct Response to Inmate Request to Staff (See Blood, Exhibit "E").

7. On April 21st, 2020 I requested from the Warden of FCI TEXARKANA, Warden Salmonson to review and consider the issuance of a compassionate release due to my qualifying medical conditions that per the CDC, place me at a disproportionate risk of serious bodily injury and/or death if I were to contract the Coronavirus COVID-19.

8. On July 23rd, 2021, Warden Salmonson denied my request for compassionate release for not having been diagnosed with a "terminal illness". Attached is the true and correct Response to Inmate Request to Staff (See Blood, Exhibit "I"). The BOP

2

failed to consider or perhaps could not consider the serious medical conditions that I suffer that the CDC identifies as placing me at a substantially increased risk of serious bodily injury and/or death if I were to contract the virus. Therefore ignoring that my request for compassionate release is not based on me having a terminal illness rather me having serious medical conditions that have a higher probability of having a terminal outcome.

9. More than 30 days have has elapsed days since the Warden denied my request for compassionate release. I have satisfied my responsibility to exhaust administrative remedies. Therefor this motion is ripe for this knowing Court to review.

10. I contracted the COVID-19 virus in March, 2020. I suffered many symptoms including headache, fever, chest pain, severe cough, loss of taste and smell, muscle/joint pain.

11. I continue to have difficulty breathing and have chest pain that seldom subsides. I did not have these conditions before my exposure to the coronavirus. The conditions that I did have in the past seem to have gotten worse since my initial COVID-19 infection.

12. The conditions at FCI Texarkana are woefully inadequate to protect me from the COVID-19 virus. The prison has gone through two (2) waves of the virus. During the second wave (Delta), the CDC deployed a rapid response team to investigate the abnormally high numbers of infection that included "breakthrough" cases whereas the inmates have either been previously infected by the first wave, fully vaccinated,

and still contracted the delta virus. At the time, this was not possible. Since then, we have now learned that this not only possible but common as the vaccines do not induce a durable immune response.

13. Several inmates became dangerously ill, as a result, a second inmate died.

14. FCI Texarkana now under the **THIRD** wave of the coronavirus with now the OMICRON variant. It has become recent knowledge that the omicron variant is a "Variant of Concern" because of it being more contagious, more virulent, and resistant to vaccination immunity.

15. FCI TEXARKANA staff continue to disobey the directives of the Bureau of Prisons, CDC, and OSHA. These failures consistently endanger myself along with all other inmates whom suffer from medical illness that would place them at a higher risk of serious injury if they were to contract the coronavirus. The staff at FCI TEXARKANA seldom wear masks or the required PPE.

16. The restrooms and common areas do not have soap or any hand towels to dry inmate's hands. The restroom that is assigned to the officer working the unit has hand soap and towels available to them. This restroom is behind lock and key and inmates are not allowed access to this area. An orderly who works on "K" unit (Michael Kruger) has filled out and completed an affidavit with information regarding there not being any soap or hand towels in the inmate bathrooms. Attached is the true and correct statement/affidavit of Michael Kruger (See Blood, Exhibit "F"). Inmates have to bring their own soap and sometimes do not even have that due to the commissary being closed or out of inventory. Some inmates cannot

afford the soap and have to do without or have to borrow soap from other inmates. The soap bars that are sometimes left by inmates for other inmates are just pieces the size of a dime. They are covered with hair and debris most of time. Sinks are broken and do not work leaving only a few working faucets for the entire population of 120 inmates. This causes many inmates to neglect basic hygiene. Many toilets have bad flushers and some do not work at all. These areas are in constant disarray and usually covered in urine and or feces. This has to be addressed by the inmates before they can use the facility. Again we have to provide our own cleaning supplies as the common inmate is not issued cleaning supplies. The only people given supplies are the orderlies and they only clean one time in the morning and that is on a good day. The affidavit of Michael Kruger the orderly on the K unit also describes this and the problems that we are now having getting the minimal supplies for cleaning as he was told that the budget was depleted and that there was none to be had.

17. Four inmates live in cubicles that are 100 square feet. This violates the BOP mandatory space requirements of 60 square feet per inmate for each cubicle, a total of 240 square feet minimum are required for four inmates. This was recently addressed by the Senate Judiciary Committee during hearings on April 15, 2021. Attached hereto as Exhibit "J" is a true and correct copy of the BOP Policy Statement on square footage. Placing 4 inmates in a room 9-ft x 10-ft (90 square feet), bunks included, violates the 6 feet social distance requirement and the 120 square foot design specification. This policy violation is causing the infection to

5

spread like wildfire throughout the facility and others in the United States. All "low" and "camp" facilities are supposed to comply with the space requirements but none do. These facilities are over utilized by the BOP to house more inmates at their expense during this pandemic. Hallways are only 4 feet wide. Inmates regularly have to pass within 1 foot of one another to move within the unit. This violates the 6-foot CDC requirement.

18. My specific medical conditions combined with the fact that I cannot social distance, my inability to maintain personal hygiene, I cannot social distance from 120 others inmates plus staff due to intentional design of the prison in combination with the lackadaisical approach to my medical care make me especially at risk for serious injury and or death if I were to contract the Coronavirus. Having the now ability being able to reflect on the past and take into consideration the failures of the BOP and the totality of the pandemic, one can confidently posit that the BOP is not capable of keeping me from harm and upon being harmed there is a high likely hood of myself being severely injured. This can be ameliorated by granting this motion to reduce my sentence to time served and allowing me to quarantine at a safe location.

19. I have a solid, verifiable release plan that can be forwarded to the unit team, Court or United States Probation Department upon request. I have a residence that will pass the strictest scrutiny of the United States Probation Department. I will live with my mother in Dewey, Arizona. I will relocate to a residence in Arizona approximately 1300 miles away from the victims in his case. By doing so I hope

that this offers some solace to those affected by my wrongdoings. I also have several job opportunities that would enable me to work from home. I will provide these potential employers to my probation officer and the Bureau of Prisons case manager as part of the process of being granted home confinement.

20. It is my hope that if the court grants me compassionate release that I can live with my mother, Carmen Blood, whom I love very much and have always cared for. I am unable to care for her from prison and am very worried about her deteriorating medical condition and the battle that she is undergoing with cancer. If compassionate release were granted, I would be able to work from home and care for my mother on a 24 hour basis. I would be able to shop for her, take her to medical appointments, prepare meals for her, and be sure that she does not fall or reinjure herself. I would also be able to take care of the home and the property. I would live with my mother at 12918 East Ponce Street, Dewey, Arizona 86327.

21. I will not abscond.

22. I will receive in advance any and all permissions from the United States Probation Department before traveling outside my restricted area. I will follow the directives of this honorable Court and the demands of my probation officer at all times.

23. During my supervised release I will be subjected many conditions that the court has acknowledged will be sufficient to maintain close observation and ensure that I am not a danger to the community. The United States Probation department is considered the most skilled in this area and has an excellent record of successfully monitory their wards.

24. I will not operate a computer unless given explicit permission of the probation officer in writing. I will have Cyber Security / monitoring software installed at my expense so that my online activities will be constantly monitored. I will not use any other computer or device unless otherwise allowed by my probation officer.

25. I will not download, view, import/export, possess any pornographic material including but not limited to child pornography.

26. I will not enter or loiter any location that caters to children or where it is known that persons under 18 years of age frequent.

27. I have been evaluated by the Bureau of Prisons with a Male PATTERN Evaluation. The PATTERN assessment is a tool utilized by the BOP to determine the likelihood of violence and recidivism. This is based upon their experience with the inmate, his criminal history and statistics that the BOP utilizes in releasing inmates. The BOP has determined that I am a "minimum risk" for recidivism and a "minimum risk" for violence - the lowest levels available in their risk assessment analysis. Attached hereto as Exhibit "K" is a true and correct copy of my PATTERN Score workup. The BOP is considered by many to be best suited to evaluate me for reentry into society and behavior.

28. I have been an exemplary inmate, have not received any administrative violations or warnings and am fully employed in the Education Department at Texarkana Federal Correction Institution. I am assisting the facility in educating other inmates and maintaining the education department.

29. I want this court to know that I have taken this sentence seriously and in doing so have become a better person. I have maintained an absolutely clear conduct history and plan to keep doing so upon release. I have taken many classes to help better myself. I have come to terms with my addiction and therefor have the insight to adjust trajectory of my decisions when confronted with triggers associated with those addictions. I am not perfect by any means, but I can confidently say that I am a much better person today than I was the day that you sentenced me.

30. Attached hereto as Exhibit "A" is a true and correct copy of the Texarkana study done by the CDC.

31. Attached hereto as Exhibit "B" is a true and correct copy of a New York Times Article dated April 10, 2021.

32. Attached hereto as Exhibit "C" is a true and correct copy of an article from the New England Journal of Medicine entitled "Vaccine Plus Decarceration – Stopping COVID-19 in Jails."

33. Attached hereto as Exhibit "D" is a true and correct copy of the CDC data "people with Certain Medical Conditions".

34. Attached hereto as Exhibit "G" is a true and correct copy of a U.S. Department of Labor (OSHA) Notice of Alleged Safety or Health Hazard dated March 31, 2020.

35. Attached hereto as Exhibit "H" is a true and correct copy of the Centers for Disease Control COVID DATA TRACKER REVIEW dated January 3, 2022.

36. Attached hereto as Exhibit "L" is a true and correct copy of a letter written by my mother, Carmen Blood, to the Court.

Thank you for your time your Honor.

Executed this 6th day of January, 2022 at Texarkana, Texas.

SCOTT T. BLOOD, declarant

Scott T. Blood
Reg. No. 11632-090
FCI Texarkana
Post Office Box 7000
Texarkana, Texas 75505